Argued October 5, reversed November 30, petition for rehearing
denied December 28, 1960, motion to dismiss appeal to
United States Supreme Court allowed
September 5, 1961

# CROFT ET AL *v.* LAMBERT

357 P. 2d 513

*Willis A. West*, Deputy District Attorney, Portland, argued the cause for appellant. With him on the briefs was Charles E. Raymond, District Attorney, Portland.

*Larry Landgraver*, Portland, argued the cause for respondent. With him on the brief was Leo Levenson, Portland.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell and Goodwin, Justices.

GOODWIN, J.

The defendant sheriff of Multnomah County appeals from a circuit court decree which restricts the sheriff in the administration of his office.

The precise question is whether the sheriff may lawfully forbid his deputies and other employes to engage in off-duty employment. The controversy has been popularly referred to as "the moonlighting problem," and is not unique in Oregon. See Annotation, 150 ALR 128.

The sheriff, relying upon chapter 101, § 4, Oregon Laws 1919, now found in modified form in ORS 204.685 (5), issued orders that his employes were to cease the practice, wherever it might exist, of working for other employers during off-duty hours.

The employes, a number of whom are respondents here, contend that the statute under which the sheriff acted is unconstitutional. They also contend that it has been repealed by implication by one or more subsequent legislative acts which provide for civil service for certain county employes. The sheriff, on the other hand, takes the position that there is no constitutional question, and that he is required to enforce the law as written.

■ In the absence of any legislative statement on the subject, it must be assumed that the sheriff, like a private employer, may impose working conditions in his discretion. Strong reasons of policy would justify giving the sheriff rather broad discretion. He is potentially liable for errors and omissions by certain of his employes. *Hammons v. Schrunk et al*, 209 Or 127, 305 P2d 405. He must be on guard against conflicts of interest in law enforcement. He must answer at the polls each four years for his stewardship as a public officer. In a large county, nearly every action taken by the sheriff, and upon which the voters will ultimately pass judgment, is performed by deputies and clerks. *Hammons v. Schrunk,* supra. Thus the sheriff has every reason to be particular about the kind of service rendered by his employes.

Turning to the statute under which the sheriff claims his authority to act, ORS 204.685, we find:

"(5) Salaries of each such deputy, assistant and clerk shall be paid out of the county treasury of Multnomah County in the same manner as salaries of county officers are paid. No such deputy, assistant or clerk shall accept any employment for which he receives a salary, wage or other compensation while holding an appointment from an officer of Multnomah County."

The trial court held that the above statute was unconstitutional, citing the equal privileges and immunities clause of Article I, § 20, Oregon Constitution, and also the Fourteenth Amendment of the United States Constitution.

Before deciding whether the trial court correctly applied these broad constitutional provisions, we shall consider each of the additional grounds now urged by the employes in support of the decree.

The employes contend first that the subject of the statute was not covered by its title and that the statute was thus void, *ab initio*, because it did not comply with Oregon Constitution, Art IV, § 20.

ORS 204.685 (5) is in much the same form as it appeared in the original act, Oregon Laws 1919, ch 101. The title of the original act reads:

"[An act] To standardize the salaries of the deputies, assistants and clerks of the county officers of Multnomah county and the constable of Portland district, and to provide for the manner of the payment of such salaries; to provide for the manner of appointment and hours of work of such deputies, assistants and clerks, and uniform rates of pay for their services; to provide the manner by which additional deputies, assistants and clerks may be appointed when required; to authorize the board of county commissioners to pay additional compensation to certain deputies of the district attorney appointed by virtue of the laws of the state of Oregon; and to repeal all acts or parts of acts in conflict herewith."

The challenge of the statute on the ground that its subject is not covered by its title is a familiar one to this court. In *People's Util. Dist. et al v. Wasco Co. et al*, 210 Or 1, 305 P2d 766, ROSSMAN, J., speaking for the court, reviewed three common types of titles

employed in the legislative process. These types may be classified as (1) general, (2) restrictive, and (3) index titles.

As quoted with approval in the above-cited case, 210 Or at 10, 11:

> "* * * The best title is one that is comprehensive, one that does not purport to be an index. An index is dangerous as a title to an act, because, if incomplete, it may mislead * * *." *Chapman v. Rural Cred. Board,* 46 SD 72, 73, 190 NW 884.

■■ The purpose of the constitutional provision is to prevent parliamentary mischief, not to strike down valid legislation. *Johnson v. Harrison,* 47 Minn 575, 50 NW 923. In the light of the constitutional intent, we do not believe the legislative assembly was taken by surprise, or that the provision under attack constituted a departure from the subject set out in the title. The title was not as general as it might have been, but it was not deceptive. The act under consideration dealt with a number of matters relating to the salaries and hours of work of Multnomah County employes. The specific provision under attack was germane to the general subject. The title did not purport to be an index. It was adequate to put any interested legislator on notice that Multnomah County officers and their employes would be affected by the act. The contention that the section is unconstitutional because not within the title of the act is without merit.

The next contention urged in support of the trial court's decree is that the limitation of the statute to Multnomah County makes it unreasonable, arbitrary, and special or class legislation. This contention also lacks merit.

■■ It is a matter of judicial notice that many of

the administrative problems of Multnomah County are, and for many years have been, unlike those of the less populated counties of the state. The legislature has enacted an impressive number of presumably valid laws with application, both expressed and implied, solely to Multnomah County.[1] It would be a startling proposition to contend that any or all of these laws are invalid merely because they apply only to Multnomah County. Some Oregon counties do not need, and cannot afford, full-time officers, much less deputies or assistants. This difference between counties was even greater in 1919 than it is today. To hold that the statute is invalid because it applies solely to Multnomah County would require this court to hold that the legislature may not exercise its police power to fit the needs of the various sections of the state as it deems proper. Such a conclusion would eliminate a substantial portion of the statutory law of this state.

■ The plaintiffs also attack the statute as local legislation in violation of Article IV, § 23, Oregon Constitution. This contention is also devoid of merit.

---

[1] The following examples are just a few of such laws:

The Multnomah County Clerk is required to post a $25,000 bond; other county clerks, $10,000 to $15,000. ORS 204.030 (3).

Verified personnel and salary statements must be furnished to county auditor by Multnomah County officers. ORS 204.245.

The Multnomah County Clerk has special duties in salary payments. ORS 204.260.

Multnomah County officers are required to file detailed mileage statements. ORS 204.525.

The recording duties of the Multnomah County Clerk are prescribed in ORS 205.210.

The Multnomah County Clerk has special duties in the disposition of fees. ORS 205.390.

The Multnomah County Clerk and his deputies are prohibited from practicing law. ORS 205.510 (2).

The uniform of personnel in the Multnomah County Sheriff's office is prescribed by ORS 206.190.

Premiums on bonds of Multnomah County Treasury Deputies are paid by the County. ORS 208.180.

The Treasurer of Multnomah County is required to keep a special trust fund. ORS 208.120 (and 208.130 covers disbursements from such fund.)

The office of Multnomah County Auditor is created by ORS 210.110, et seq.

The constitutional restriction upon "certain local and special laws" enumerates specific subject matter which must not be dealt with in special or local laws. In *State v. Savage*, 96 Or 53, 184 P 567, 189 P 427, the constitutionality of an act restricting the number of salt-water crabs that could be taken in Coos County was challenged. We held:

"Where there is no express constitutional restriction against the passage of local laws by a state legislature, the courts cannot hold such laws void for want of constitutional authority to enact them, unless they are clearly discriminatory or merely arbitrary. There is a distinction between special laws and class legislation." 96 Or at 62.

And in *State ex rel Powers v. Welch*, 198 Or 670, 259 P2d 112, we said:

"The constitution of the state, unlike * * * the federal constitution, is one of limitation of powers, and, unless the legislative act is prohibited, expressly or impliedly, by the constitution, it must be held valid, and before the court will declare an act unconstitutional it must appear to be such beyond a reasonable doubt. State v. Cochran, 55 Or 157, 179, 104 P 419, 105 P 884." 198 Or at 672.

The statute under attack is not within the enumerated class of subjects which may not be treated by local legislation.

Likewise without merit is the claim that the statute denies Multnomah County employes equal protection of the law, or equal privileges and immunities.

■ When a statute is attacked as unconstitutional, the assailant must show in what way the statute violates a protected interest. The plaintiffs in this case have presented in their briefs and argument only hypo-

thetical examples of supposed injustices which might grow out of rigorous enforcement of the sheriff's order.

While it may be unjust to deprive a clerk in the sheriff's office of the right to baby-sit for her daughter and to accept fifty cents therefor, no constitutional question is presented. Even so, we doubt that the sheriff has construed, or will construe, the statute in the manner suggested by plaintiffs. We likewise regard the speculation of plaintiffs' witnesses concerning their benefits under the federal armed forces reserve acts as illusory. The district attorney stated in the hearing below that no attempt had been made to interfere with reserve obligations, and that the matter was not before the court.

A number of similar examples could be mentioned, but this kind of argument begs the question. No workman has a constitutional right to work for the sheriff. If working conditions are unduly oppressive, he has two alternatives: he may seek a change in working conditions, including a change in legislation, if necessary, or he may work for somebody else.

As far as the reasonableness of a classification is concerned, the burden is on the plaintiffs to prove that it is unreasonable. The cases we have found indicate that similar statutes and ordinances elsewhere are not only reasonable, but consistent with good public administration.

The legislature might have intended to prevent police officers, in or out of uniform, from working as bouncers in dance halls, as functionaries at a race track, or as bartenders. For the statute to single out certain occupations might have been deemed unreasonable. By prohibiting all gainful occupations on off-duty time, the legislature avoided the criticism that

it was discriminating against specific occupations upon which there might be a difference of opinion.

■ We are unable to see that the legislature was either unreasonable or discriminatory. The legislature may be justified in believing that competent, alert, and effective public service is improved by just such a requirement as the sheriff is attempting to enforce. In a matter of legislative discretion, the fact that the plaintiffs disagree with the legislature does not make the law unconstitutional.

While we have not made an exhaustive study of the legislation and ordinances of other states, we find that similar limitations upon the outside activities of public employes are relatively common. The plaintiffs have not cited, nor have we found, a case in which such a statute or ordinance has been stricken on constitutional grounds. On the contrary, statutes limiting the outside activities of police and fire department personnel have been sustained in *Isola v. Borough of Belmar*, 34 N J Super 544, 112 A2d 738; *Bell v. District Court of Holyoke*, 314 Mass 622, 51 NE2d 328, 150 ALR 126. Also see *Vick v. Patterson*, 158 Cal App2d 414, 322 P2d 548, where an administrative rule was held to be valid for internal regulation of the San Francisco fire department, but an employer of an off-duty fireman could not set up the violation of the rule to defeat recovery in an action for the agreed wage earned "illegally".

■ A final ground urged in support of the decree is the implied repeal of ORS 204.685 (5). The plaintiffs say that chapter 306, Oregon Laws 1953, repealed a number of sections formerly found in Title 87, OCLA, which later became chapter 204, ORS. This is true, but the 1953 act did not expressly repeal the section

under attack. The 1953 act dealt extensively with salaries and related matters in all counties of the state. It expressly repealed a large number of statutes, and then went on to repeal "all other Acts * * * in conflict * * * herewith." A careful reading of the 1953 act fails to disclose any intent to repeal the section under attack, and likewise fails to reveal any inconsistency between the provisions of the two acts. The plaintiffs point out none.

The plaintiffs also seek an alternative implied repeal of the section under attack within the county civil service law. ORS 241.002 to 241.990. The civil service law contains many sections, none of which expressly deals with the subject of ORS 204.685 (5). None has been suggested by the plaintiffs as a possible repealer. The plaintiffs urge merely that the newer law has occupied the field, rendering the older law obsolete.

■ The civil service law contains new matter. While the older law did not deal with discipline, the county civil service law does provide for disciplinary matters. ORS 241.420 to 241.460. The civil service law also specifically provides for the ultimate form of discipline, firing. On that subject it is no doubt controlling. Despite the new matter concerning discipline, we are unable to read into the civil service law any conflict with or implied repeal of ORS 204.685 (5). Furthermore, no disciplinary question is before the court.

■ Implied repeals are not favored. *Wampler v. Dept. of State Police,* 224 Or 439, 355 P2d 238. There is nothing inconsistent between the act placing Multnomah County Sheriff's deputies under civil service and the act requiring them to forbear other employment.

In *Hammons v. Schrunk,* supra, it was urged that

the sheriff was relieved of civil liability for the negligence of his deputies because he could not freely hire and fire them. We held that there was no conflict between the civil service law and the statute imposing liability upon the sheriff. 209 Or at 136. In that case it was attempted to hold that the Civil Service Law repealed ORS 204.685 (3), and in this case it is 204.685 (5) that is under attack.

We hold that ORS 204.685 (5) stands unrepealed, and that it is constitutional. It follows that the decree of the trial court is reversed, neither party to recover costs.