Argued March 29, affirmed May 26, petition for rehearing denied
June 22, petition for review denied September 6, 1972

FLAMINGO MOTEL & RESTAURANT, INC. ET AL,
*Appellants, v.* THE PORT OF PORTLAND
(No. 364-219), *Respondent.*

497 P2d 673

*Edward H. Warren,* Portland, argued the cause for appellants. With him on the briefs were Hershiser, Mitchell & Warren, Portland.

*Lofton L. Tatum,* Portland, argued the cause for respondent. With him on the brief were Paul N. Wonacott and Wood, Wood, Tatum, Mosser & Brooke, Portland.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

THORNTON, J.

Plaintiffs appeal from the trial court's decree that Ordinance No. 146① of defendant, The Port of Portland, was valid and enforceable against the plaintiffs.

---

① The relevant portion of Ordinance No. 146 provides:
"SECTION V  OPERATION OF LIMOUSINE,
BUSSES AND COMMERCIAL PASSENGER VEHICLES,
OTHER THAN TAXICABS
"A.  GENERAL
"1.  For the purpose of these Rules and Regulations, an authorized limousine, bus or commercial passenger vehicle is defined as one having a contract with or permit issued by The Port of Portland.  Limousines and busses are otherwise defined under 'definitions'. Commercial Passenger Vehicles means those vehicles other than taxicabs, which are used in the business operations of any hotel, motel, parking lot or auto rental office to transport customers between Portland International Airport and such hotel, motel, parking lot or auto rental office located off airport property.
"2.  Operators of authorized limousines, busses and commercial passenger vehicles shall discharge and load passengers only at positions as designated by the General Manager of The Port of Portland, and shall have no right or privilege to park at such positions beyond the time required to discharge and load passengers and baggage, and during standby periods shall park only in areas designated and only to the extent of space available.
"B.  OPERATIONS OF LIMOUSINES AND BUSSES
"No unauthorized limousine or bus shall operate at or upon Portland International Airport, except the following, and only under the stated conditions:
"1. Busses or limousines when chartered by an air carrier

authorized to operate at Portland International Airport for the purpose of transporting said air carrier's passengers from the airport because of flight cancellations.

"2. Busses or limousines engaged in local sightseeing tours when visiting the Portland International Airport and which do not carry passengers embarking or debarking from air carriers serving Portland International Airport.

"3. Busses or limousines engaged in transporting for hire groups of arriving or departing passengers by pre-arrangement with The Port of Portland, provided that payment of a charge of fifteen cents (15¢) per passenger has been paid by or on behalf of such bus or limousine to The Port of Portland.

## "C. OPERATION OF COMMERCIAL PASSENGER
### VEHICLES

"1. No person shall operate a commercial passenger vehicle, as defined in Paragraph A, at or upon Portland International Airport without having first obtained a permit from the General Manager of The Port of Portland.

"2. The General Manager is authorized to issue a permit to a person applying therefor only after finding that the issuance of the permit would contribute to the efficiency, safety and convenience in handling the flow of customers at Portland International Airport. All applications for a permit shall be accompanied by the payment of a basic permit fee of $100.00.

"3. Permits shall be issued for a period of six (6) months, and may be revoked upon 30 day's [sic] notice by the General Manager upon such grounds as he, in his sole discretion, deems justifiable. In the event, however, of violation of any rule, regulation or ordinance governing Portland International Airport, the General Manager may revoke such permit upon 24 hour's [sic] notice.

"4. The cost of the applicable permit shall be based on the total fees and charges for each category of commercial passenger vehicle as set out in the following rate schedules:

"a. Hotel and Motel Vehicles

"(1) Charge for each vehicle used for transportation of customers to and from airport $100.00

"(2) Charge based on number of trips from airport $ 0.50 per trip

The plaintiffs are five motels, a commercial parking enterprise and an automobile rental company affected by this ordinance. They do not solicit business or maintain physical facilities on the airport premises, but provide courtesy cars to pick up customers at the airport when this service is requested by the customer. No charge is made for this service.

The Port of Portland (hereafter referred to as Port) is a municipal corporation organized under ORS ch 778. The Port owns the airport and operates it in its proprietary capacity. The policy of the Port has been to operate the airport on a self-sustaining basis. To effectuate this policy Ordinance No. 85 was enacted in 1958, requiring persons using the airport for revenue-producing, commercial activities to obtain a permit and pay the rates and charges prescribed for such use. The charges are generally a percentage of the gross receipts derived from the transaction of business on the airport premises.

Persons in the business of providing transportation to and from the airport, such as taxicabs, limousine services, charter busses and car rental companies

---

"b. Parking Lot Vehicles

   "(1) Charge for each vehicle used for transportation of customers to and from airport    $100.00

   "(2) Charge based on number of available parking spaces on lot    $ 1.50 per space

"c. Auto Rental Vehicles

   "(1) Charge for each vehicle used for transportation of customers to and from airport    $100.00

   "(2) Charge based on number of autos in fleet assigned for use by airport customers    $ 2.50 per auto"

who solicit business or maintain physical facilities on the airport premises, pay to use airport facilities for this purpose. Persons such as the plaintiffs who provide transportation to and from the airport incidental to the conduct of their principal business pay nothing for the use of airport facilities because they do not solicit business or maintain physical facilities on the airport premises.

As the use of courtesy cars expanded, the businesses paying for the use of airport facilities complained that they were losing revenue due to the use of courtesy cars and that it was unfair to let the businesses using courtesy cars come upon the airport premises to pick up customers without paying for the use of airport facilities. After investigating this situation, the Port adopted Ordinance No. 146 (repealing Ordinance No. 140 and amending Ordinance No. 85), which specifically requires hotels, motels, parking lots and auto rental companies to obtain a permit and pay a fee to pick up customers on the airport premises. The plaintiffs then brought this action seeking a declaratory judgment that the ordinance was invalid.

■ The plaintiffs' first contention is that Ordinance No. 146 is invalid because it attempts to license and regulate business operations outside of the airport premises. We do not so construe the ordinance. The only portion of the plaintiffs' business activities affected by the ordinance is the entry of their vehicles upon the airport premises to pick up customers. This activity is clearly within the sphere of the Port's legislative authority.

Plaintiffs next contend that the fee required by Ordinance No. 146 is a tax, the enactment of which was beyond the Port's taxing power. The Port counters

this contention by asserting in effect that the charge imposed is not a tax but a fee authorized by ORS 778.025 (4), which reads:

"The port may:

"* * * * *

"(4) Purchase or otherwise acquire, construct, operate, maintain, lease, rent and dispose of airports, and their approaches, wharves, piers, docks, slips, warehouses, elevators, dry docks, terminals, buildings, and all other facilities and aids incident to the development, protection and operation of the port and of the air transport, shipping, commercial and industrial interests of the port, within the boundaries of the port, and *collect wharfage, storage and other charges for the use of such facilities.*" (Emphasis supplied.) (now ORS 778.025 (5))

The rates charged by a public utility owned by a municipal corporation ordinarily are not considered taxes. 12 McQuillin, Municipal Corporations 497, § 35.38 (3d ed rev 1970). The reason that these charges are not considered taxes is that their purpose is to defray the expense of operating the utility and they are imposed only upon those using the service provided. Taxes, on the other hand, are not based on the amount of use and the proceeds are used to defray general municipal expenses. *See, e.g., Western Corp. v. Ft. Collins,* 146 Colo 464, 362 P2d 155 (1961). We are of the opinion that the same reasoning applies in the present case. The charges are directed toward commercial users of the airport and are based upon the amount of such use. The proceeds will be applied to the cost of the airport facilities, its operation and future expansion.

We find that the charges imposed here are authorized by ORS 778.025 (4).

· Thirdly, plaintiffs contend that the classification scheme of Ordinance No. 146 is unreasonable and thus denies them equal protection under the Fourteenth Amendment to the United States Constitution and Oregon Constitution, Art I, § 20, in that its application is limited to hotels, motels, parking lots and auto rental companies, while others similarly situated are not subject to its requirements.

██ The authorities are uniform that one who attacks the reasonableness of a classification established by a statute or ordinance has the burden of proving that the classification is unreasonable. See, for example, *Croft et al v. Lambert,* 228 Or 76, 357 P2d 513 (1961) ; *Cox v. McNamara,* 8 Or App 242, 493 P2d 54, Sup Ct *review denied; cert denied* — US —, 34 L Ed 2d 137 (1972). In the case at bar the plaintiffs presented no evidence in support of their contention that persons not subject to the ordinance were using the airport premises in the conduct of their commercial activities. The plaintiffs' failure to meet their burden of proof requires a finding that the classification made by Ordinance No. 146 does not deny the plaintiffs equal protection of the law. *Cox v. McNamara,* supra.

■ Finally, the plaintiffs assert that Ordinance No. 146 discriminates against and places an undue burden upon interstate commerce in violation of U. S. Const. Art I, § 8. We first consider the contention that the ordinance discriminates against interstate passengers. As the ordinance applies to commercial vehicles whether the passengers they pick up at the airport are interstate or intrastate travelers, there is no discrimination in this regard.

■ The contention that the ordinance places an undue burden on interstate commerce rests primarily on

plaintiffs' characterization of the ordinance as an exclusionary device. We do not agree with this characterization. Under the ordinance commercial vehicles are required to have a permit to pick up customers on the airport premises. Permits are to be issued by the general manager only after finding that the issuance of the permit would contribute to the efficiency, safety and convenience in handling the flow of customers at Portland International Airport. As the asserted purpose of the ordinance is to raise revenue, we have no reason to believe that obtaining a permit will be anything more than a routine matter. If, in practice, the ordinance is used to arbitrarily exclude commercial vehicles from the airport, the constitutionality of such a practice would be a proper question; however, we do not reach this question in advance of such a showing.

■ Also, plaintiffs contend that the charge imposed by the ordinance for using the airport facilities to pick up customers places an unreasonable burden on interstate commerce. Plaintiffs cite many cases in support of the proposition that they have a right to enter upon airport property to pick up customers. *See, e.g., Airport Authority v. Stewart,* 278 NC 227, 179 SE2d 424 (1971). While we agree that under certain circumstances it might be an undue burden on interstate commerce to prevent interstate passengers from being picked up at the airport by whomever they choose, it does not follow from this that the plaintiffs have the unrestricted right to enter airport premises to pick up such passengers without paying a fee. In *Evansville Airport v. Delta Airlines,* 405 US 707, 92 S Ct 1349, 31 L Ed 2d 620 (1972), the Supreme Court held that a $1 use and service charge imposed upon each passenger boarding a commercial aircraft by the air-

port authority was not an unreasonable burden on interstate commerce. The court said:

> "We therefore regard it as settled that a charge designed only to make the user of state-provided facilities pay a reasonable charge to help defray the costs of their construction and maintenance may constitutionally be imposed on interstate and domestic users alike * * *. The facility provided at public expense aids rather than hinders the right to travel. A permissible charge to help defray the cost of the facility is therefore not a burden in the constitutional sense." 405 US at 714.

As the plaintiffs do not contend that the charge imposed on commercial vehicles by the ordinance for the use of the airport facilities is unreasonable, we hold that such charges did not place an unreasonable burden on interstate commerce.

The provision in Ordinance No. 146 providing for revocation of permits without hearing in the sole discretion of the general manager, was declared invalid by the trial court. No appeal was taken from this portion of the trial court's decree.

Affirmed.